1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENDY LECLAIR,

               Plaintiff,

     v.

SUTTELL AND ASSOCIATES, P.S.,

               Defendant.

Case No. C09-1047-JCC

ORDER

      This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 19), Plaintiff's Response (Dkt. No. 25), Defendant's Reply (Dkt. No. 28), and Plaintiff's Supplemental Filing[1] (Dkt. No. 27). This matter also comes before the Court on Plaintiff's Motion for Leave to File Amended Complaint (Dkt. No. 36), Defendant's Response (Dkt. No. 39), and Plaintiff's Reply (Dkt. No. 41). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Motion to Amend (Dkt. No. 36), and GRANTS IN PART the Motion for Summary Judgment (Dkt. No. 19), for the reasons explained herein.

---

      [1] Plaintiff filed supplemental authority with the Court to address an argument that was raised for the first time in Defendant's reply brief. The supplemental authority consists of a single Order by Judge Burgess, which was decided on December 3, 2009, four days after Plaintiff's Response was due. (Dkt. No. 32-2.) The Court finds good cause to consider this additional material. Thus, the Motion for Leave to File Supplemental Authority (Dkt. No. 32) is GRANTED.

ORDER
PAGE - 1

1

**I.      BACKGROUND**

2   This case investigates the tactics that a debt collector may lawfully employ to pressure

3 a debtor to pay. Sometime in 2002 or 2003, Plaintiff Wendy LeClair defaulted on a revolving

4 credit account with Spiegel Card Processing, CE, leaving $4984.42 unpaid. (LeClair Affidavit

5 (Dkt. No. 27-2 at 3); *see also* Hammer Decl. (Dkt. No. 20 at 2).) The debt was subsequently

6 sold to Midland Funding, LLC, which hired the law firm of Suttell & Associates, P.S. to

7 collect it. (*See* Mot. 2 (Dkt. No. 19).) For reasons that remain unclear, neither Midland nor

8 Suttell & Associates made any action to collect the debt for six years.

9   On May 15, 2008, Suttell & Associates claims that it sent LeClair a demand letter for

10 the amount owing. (*See* Dkt. No. 20 at 2, 6, 7.) LeClair claims, in an affidavit, that she never

11 received the letter, and it is undisputed that she never responded. (LeClair Affidavit (Dkt No.

12 27-2 at 4); Mot. 2 (Dkt. No. 19).) More than three months later, on August 26, 2008, Suttell &

13 Associates served Plaintiff with a Summons and Complaint for a lawsuit in King County

14 Superior Court on behalf of its client, Midland. (Mot. 2 (Dkt. No. 19); Resp. 1 (Dkt. No. 25).)

15 The Summons declared: "A lawsuit has been started against you in the above-entitled court by

16 the above-named plaintiff. [Midland's] claim is stated in the written complaint, a copy of

17 which is served upon you with this Summons." (Resp. 2 (Dkt. No. 25); King County Summons

18 (Dkt. No. 20 at 9).) The Summons also informed LeClair of her ability to demand that the case

19 be filed, and warned her of the danger of default if she did not respond within twenty days of

20 service. (King County Summons (Dkt. No. 20 at 9).) However, mysteriously, Suttell &

21 Associates did not actually file the Complaint in King County Superior Court for more than

22 seven months, until April 9, 2009. (Hammer Decl. 3 (Dkt. No. 20).) Apparently, LeClair

23 phoned the court after receiving the summons, and learned that no actual suit had been filed at

24 the time she received service of process. (4/21/09 Letter (Dkt. No. 25-14 at 2).) LeClair did not

25 demand that the summons and complaint be filed.

26   //

ORDER
PAGE - 2

1    Plaintiff responded to the service of process by phoning and, soon afterwards, writing a

2    letter to Defendant. (Resp. 2 (Dkt. No. 25).) In a letter dated September 4, 2008, LeClair

3    indicated that, although she did not dispute the amount owed, she believed that the statute of

4    limitations had run on the debt. (9/4/08 Letter (Dkt. No. 20 at 17).) "My understanding,"

5    LeClair wrote, "is that in Washington State the SOL is 3 years on this type of debt. Based on

6    that information, it would appear that the SOL has expired on this matter. . . . If, however, you

7    provide me with documented proof that the SOL has not expired in this matter, or if my

8    understanding of the statute is incorrect, I would be more than happy to discuss payment." (*Id.*)

9    She set a deadline of September 24, 2008, indicating that, if she had not heard back from

10   Suttell & Associates by that date, she would assume that the statute of limitations had run. (*Id.*)

11   Again, a strangely lengthy amount of time passed. On March 13, 2009, Suttell &

12   Associates finally replied to LeClair, enclosing an affidavit by Midland and additional

13   information that it claimed established that the date of the last payment on the Spiegel account

14   was May 8, 2003. (3/13/09 Letter (Dkt. No. 20 at 19).) It also asserted that Washington State

15   has a six year statute of limitations, which it believed extended the deadline for suit until May

16   8, 2009. (*Id.*) On April 18, LeClair responded again, protesting the amount of time that had

17   passed since the service of summons and her previous letter, and asserting that she needed to

18   get confirmation from her bank that a payment had indeed been made to the Spiegel account in

19   2003. (4/13/09 Letter (Dkt. No. 25-11 at 2).) Plaintiff did, in fact, contact her bank, and

20   continues to assert that she made no payment to the Spiegel account after September of 2002.

21   (*See* LeClair Affidavit (Dkt. No. 27-2 at 3).)

22   Suttell & Associates apparently did not respond to this letter; instead, more than seven

23   months after the date of service of process, it filed its Complaint in King County Superior

24   Court—and almost immediately afterward (a mere five days later, on April 13, 2009) moved

25   for default. (Dkt. No. 25-13 at 2–3; King County Compl. (Dkt. No. 20 at 11).) LeClair, instead

26   of retaining counsel or appearing in the action, wrote Judge Hill a letter on April 21, 2009,

ORDER
PAGE - 3

1  "protesting" Midland's request for a default judgment, and reciting, in essence, the saga of this

2  debt. (4/21/09 Letter (Dkt. No. 25-14 at 2).) She contested the limitations issue, questioned the

3  validity of the summons, and requested that a default judgment not be entered. (*Id.*) She did

4  not, however, ever appear formally in the action, and the King County Superior Court

5  eventually rendered a default judgment. (King County Default (Dkt. No. 30 at 5).) On May 12,

6  2009, LeClair mailed Suttell & Associates a check for the full amount of the default (and the

7  full amount of the original debt): $4984.42. (5/12/09 Letter (Dkt. No. 21 at 11).)

8       LeClair filed the instant lawsuit in this federal court two months after payment, alleging

9  that Suttell & Associates violated the Fair Debt Collection Practices Act ("FDCPA"), 15

10  U.S.C. § 1692 *et seq.*, in its actions collecting the debt. Suttell & Associates now moves for

11  summary judgment on what, until recently, amounted to all of LeClair's claims.

12  **II.    MOTION TO AMEND**

13       On January 12, 2010, Plaintiff filed a motion to amend her complaint, adding a number

14  of claims. (Dkt. No. 36.) One of these claims concerns the running of the statute of limitations,

15  which Plaintiff had argued in response to the motion for summary judgment, but had not at that

16  point pleaded. There are a number of other claims not alluded to in any moving paper.

17       The Court is aware that the pleading amendment deadline passed on January 8, 2010.

18  However, the decision to allow or decline leave to amend is a matter for the discretion of the

19  district court. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398

20  (9th Cir. 1986) (reviewing for abuse of discretion). The deadline had only passed four days

21  beforehand—and two of those days occurred over a weekend. For reasons of judicial economy

22  and fairness, the Court finds good cause to allow the amendment. *See* FED. R. CIV. P. 15(a)(2),

23  16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). The

24  Court hereby GRANTS the Motion. (Dkt. No. 36). The Motion for Summary Judgment (Dkt.

25  No. 19) will be treated as a motion for partial summary judgment, and will only conclusively

26  determine the issues raised in Defendant's motion, leaving the rest for further proceedings.

1    **III.    STANDARD OF REVIEW**

2         Under Federal Rule of Civil Procedure 56(c), the Court shall grant summary judgment

3    "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

4    there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

5    matter of law." Summary judgment is appropriate against a nonmoving party who fails to make

6    a showing sufficient to establish the existence of an element essential to that party's case, and

7    on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S.

8    317, 322 (1986). That is, after the movant has carried its burden of demonstrating that there is

9    no genuine issue of material fact, the burden shifts to the nonmovant, who must present a

10   quantum of evidence such "that a reasonable jury could return a verdict" in its favor. *Anderson*

11   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is

12   appropriate, the Court must view the facts in the light most favorable to the non-moving party

13   and draw reasonable inferences in favor of that party. *Scheuring v. Traylor Bros., Inc.*, 476

14   F.3d 781, 784 (9th Cir. 2007).

15   **IV.    DISCUSSION**

16        The Fair Debt Collection Practices Act is a federal consumer protection statute. It

17   prohibits a debt collector from using "any false, deceptive, or misleading representation or

18   means in connection with the collection of any debt." 15 U.S.C. § 1692e. Like other statutes of

19   its kind, the FDCPA strikes a cautious balance between protecting the public and allowing debt

20   collectors reasonable leeway to conduct legitimate business. *See, e.g.*, S.Rep. No. 95-382, at 1

21   (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1698–99 (the statute prohibits "improper

22   conduct" and dishonest collection practices "without imposing unnecessary restrictions on

23   ethical debt collectors"); *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d

24   1162, 1169–70 (9th Cir. 2006). The statute itself contains a list of proscribed practices; this list

25   is non-exhaustive. *See Clark*, 460 F.3d at 1170 n.4. Courts interpret the FDCPA in accordance

26   with the "least sophisticated consumer" standard, ensuring that the "FDCPA protects all

ORDER
PAGE - 5

1    consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the

2    credulous." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir.

3    2006); *see also Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222 (9th Cir. 1988).

4        A.    **Initial Disclosures: 15 U.S.C. § 1692g**

5        15 U.S.C. § 1692g(a) requires a debt collector to send to the consumer, in its initial

6    communication with the debtor or within five days afterward, a written notice containing a

7    number of required items (including, for example, the amount of the debt and the name of the

8    creditor). Defendant produced evidence that it sent the required disclosures.[2] Plaintiff attempts

9    to resist summary judgment by noting that Defendant has not produced any evidence that she

10   *received* the required initial disclosures, and disputing the type and quantity of the evidence

11   that Defendant produced. (Resp. 24 (Dkt. No. 25).)

12       Plaintiff's arguments are foreclosed by Ninth Circuit caselaw. Subsection 1692g only

13   requires that the disclosures be timely *sent*; it says nothing about the consumer's receipt of

14   those disclosures. *See* 15 U.S.C. § 1692g(a). Consistent with this plain language, the Ninth

15   Circuit has interpreted the statute only to require evidence that the notice has been sent. *Mahon*

16   *v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201–02 (9th Cir. 1999) ("We hold

17   that section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector

18   need not establish actual receipt by the debtor.") Moreover, Defendant's evidence regarding its

19   standard business practices is similar to that produced in *Mahon*, in which the debt collector

20   demonstrated that the notice had been sent with reference to the ordinary practices in that

21   office. *See id.* at 1202. There is no genuine dispute of material fact on this issue, and summary

22   judgment is therefore GRANTED as to it. *Anderson*, 477 U.S. at 248.

23   ───────────────

24       [2] Defendant produced a form letter with blank fields that contains the required initial
     disclosures (Dkt. No. 20 at 6), a log of communications with Plaintiff indicating that the
25   demand letter had been sent, (*Id.* at 7), and statements in two declarations (although not, the
     Court observes, notarized affidavits) averring that the required disclosures had been mailed on
26   May 15, 2008 (*Id.* at 1–2, Dkt. No. 31 at 1–5).

**B.      Timing of Filing, Suit, and Default: 15 U.S.C. § 1692e(5)**

In her complaint, LeClair asserts that Suttell & Associates threatened an action that could not lawfully be taken, violating 15 U.S.C. § 1692e(5),[3] by filing the complaint more than seven months after serving her with process, and moving for default five days after the tardy filing. (Compl. 3 (Dkt. No. 1).)[4] In essence, Plaintiff argues that Washington law requires a litigant in state court to file her complaint within ninety days of service, and that, therefore, Defendant filed and then moved for default in a case that was never actually commenced—an "action that could not lawfully be taken." (*Id.*; *see also* Resp. 15–19 (Dkt. No. 25).)

Plaintiff's theory is as follows. Washington Superior Court Civil Rule 3 provides:

> [A] civil action is commenced by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint. Upon written demand by any other party, the plaintiff instituting the action shall pay the filing fee and file the summons and complaint within 14 days after service of the demand or the service shall be void. An action shall not be deemed commenced for the purpose of tolling any statute of limitations except as provided in RCW 4.16.170.

Washington Revised Code Section 4.16.170 provides:

> For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. . . . If the action is commenced by service on one or more of the defendants . . . the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

Plaintiff contends that these two statutes impose a duty upon all litigants to file the summons and complaint within ninety days, or the suit is a "nullity." (Resp. 15–19 (Dkt. No. 25).)

---

[3] Section 1692e is a non-exclusive list of specifically proscribed debt collection practices. Subsection 1692e(5) prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

[4] The Court notes that Plaintiff only argues, in response to Defendant's summary judgment motion, that filing for default—not filing the suit itself—violated § 1692e(5). (*Compare* Dkt. No. 25 *with* Dkt. No. 1.) The Court considers both arguments, however, because they are encompassed by the same reasoning, and because Defendant so moved.

ORDER
PAGE - 7

1   Defendant's behavior, in serving Plaintiff *seven months* before filing the summons and
2   complaint in state court, and then moving for default a scant *five days* after filing, is deeply
3   troubling. Nonetheless, the Court finds the conclusion inescapable that this particular theory
4   simply misunderstands Washington procedural law. All of the cases cited by Plaintiff—and the
5   language of the law itself, bookended by two very clear limiting clauses—indicate that the
6   ninety-day window only applies to tolling the applicable statute of limitations, not to the
7   validity of the suit itself.

8   The Washington Supreme Court explained that section 4.16.170 "controls the tolling of
9   the period of limitations while [Civil Rule 3] governs the commencement of actions." *Nearing*
10  *v. Golden State Foods Corp.*, 792 P.2d 500, 503 (Wash. 1990). The statute deals "exclusively"
11  with tolling; it does not impose upon state litigants a free-ranging obligation to file within
12  ninety days of service. *Id.* at 502. Plaintiff repeatedly cites language (out of context) from
13  *Citizens Interested in the Transfusion of Yesteryear v. Board of Regents*, 544 P.2d 740, 744
14  (Wash. 1976), *overruled in part by Jones v. Stebbins*, 860 P.2d 1009, 1011–12 (Wash. 1993),
15  that "[t]he lawsuit became a nullity" without filing within ninety days, but the case merely held
16  that failure to file the summons and complaint within the statutory tolling window meant that
17  the service did not toll the limitations period. No case cited by Plaintiff stands for the
18  proposition that a defendant must file the summons and complaint within ninety days, else
19  *service*—which begins the lawsuit—is ineffectual. Washington court rules, including the text
20  of Rule 3(a) itself, belie this conclusion.[5] The only effect of Defendant's failure to file within
21  ninety days was that the statute of limitations was not tolled.

22

23  [5] Rule 3(a) specifically contemplates non-simultaneous service and filing by allowing a
24  defendant who has been served to demand that the suit be filed within fourteen days. WASH.
    SUP. CT. CIV. R. 3(a). This is, in essence, a safety valve for a state court defendant, who
25  otherwise would not be able to appear and resist default. This safety valve appears on the very
    first page of the summons that LeClair received. (King County Summons (Dkt. No. 25 at 2).)
26  It is apparent that Plaintiff made no such demand here. (Mot. 7 (Dkt. No. 19).) No other law or

ORDER
PAGE - 8

1    Although the Court finds the practice to be either brazenly tactical or slovenly, it was

2    simply not unlawful under Washington state court rules to wait seven months to file process,

3    and move five days after filing for default. Therefore, Suttell & Associates did not "threaten to

4    take an action that could not lawfully be taken." 15 U.S.C. § 1692e(5). The Court thus

5    GRANTS the Motion for Summary Judgment as to this issue.[6]

6    **C.    False Representation: 15 U.S.C. § 1692e(9)**

7    LeClair asserts that service of unfiled process was a written communication that falsely

8    represented to be authorized by a court of Washington State, in violation of 15 U.S.C. §

9    1692e(9). (Compl. 3 (Dkt. No. 1).) Section 1692(e)(9) proscribes "[t]he use or distribution of

10   any written communication which simulates or is falsely represented to be a document

11   authorized, issued, or approved by any court, official, or agency of the United States or any

12   State, or which creates a false impression as to its source, authorization, or approval."

13   In this Circuit, the standard for discerning whether a statement is materially false or

14   misleading was announced in *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1229

15   (9th Cir. 1989). If the least sophisticated debtor would "likely be misled" by a communication

16   from a debt collector, the debt collector has violated the Act. *Id.* at 1225.

17   The Court cannot find that LeClair was likely misled to believe that the service of

18   process was authorized by King County Superior Court. In the first place, nothing in the

19   document was false. The summons merely states that a law suit has been *started*, which, as

20   discussed above, it had: service begins a lawsuit under Washington Superior Court Civil Rule

21   _____

22   rule in Washington State requires simultaneous filing of the summons and complaint, or

23   provides that the time for defense runs from the date of service, not the date of filing. The

     default in this case was faithful to the letter of the rule, if not to the spirit of fair play. *See*

24   WASH. SUP. CT. CIV. R. 3(a), 4(d)(1), 12(a)(2).

25   [6] This holding is narrow. It does not affect Plaintiff's ability to pursue claims that the
     practice of serving an unfiled complaint, waiting seven months to file the complaint, and then

26   moving for default a mere five days after filing, was unfair or unconscionable under 15 U.S.C.
     § 1692f. (*See* Am. Compl. 3 (Dkt. No. 36-2).)

ORDER
PAGE - 9

3. More importantly, the Court finds that reading the first page of the summons would have provided Plaintiff with adequate information about the status of her suit. The Summons says, in no uncertain terms, "You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the plaintiff." (King County Summons (Dkt. No. 20 at 9).) Upon reading this sentence, even the least sophisticated consumer would likely understand that the lawsuit had not yet been filed, and would likely therefore understand that the state court had not issued it.

Finally, the Court is unwilling to hold that service of an unfiled complaint violates the FDCPA, because the ramifications of this rule would require debt collectors *always* to file first and then serve. This is simply too sweeping of a proposition for the Court to countenance.[7] The document was not deceptive, and therefore did not violate Section 1692(e)(9). *Compare Johnson v. Eaton*, 873 F.Supp. 1019 (M.D. La. 1995).

**D.      Filing a Suit Barred by the Statute of Limitations: 15 U.S.C. § 1692e(5)[8]**

In response to Defendant's motion for summary judgment, LeClair asserts that Suttell & Associates threatened to take action that it could not legally take by filing an action that was barred by the applicable statute of limitations. (Resp. 9 (Dkt. No. 25).)

---

[7] There are legitimate reasons to serve unfiled complaints. For instance, a debt collector may wish to portray to a consumer honestly that it may file the summons and complaint if the debtor refuses to respond through less formal means. This may, in some cases, lead to the conservation of judicial resources and filing fees.

[8] Defendant argues that this argument is precluded by collateral estoppel, because Plaintiff had an opportunity to litigate it in state court. (Reply 2 (Dkt. No. 28).) But that case went to default judgment before ever having been considered on the merits. Defaults are not generally considered to be the type of final judgment from which preclusion operates. *See Joseph Druther v. Dean William Hamilton & Fairway Collections, LLC*, C09-5503-FDB (W.D. Wash. Dec. 3, 2009); Erwin Chemerinsky, Federal Jurisdiction § 11.2.4 at 749; Restatement (Second) of Judgments § 28, cmt. e ("An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so . . . in the case of a judgment entered by . . . default, none of the issues is actually litigated.") The statute of limitations argument is not precluded.

ORDER
PAGE - 10

1    This issue is not properly before the Court, because it was raised for the first time in

2    Plaintiff's response for summary judgment, and was only included in the most recent Amended

3    Complaint. More importantly, there is a genuine dispute of material fact: the date of LeClair's

4    last payment on the Spiegel account. LeClair insists that she did not make a payment after

5    September 2002; this is corroborated by her sworn affidavit and by her credit report, which

6    indicates that the Spiegel account was closed as of that date. (LeClair Affidavit (Dkt No. 27-2

7    at 2); LeClair Credit Report 5 (Dkt. No. 25-2).) Defendant, however, produced a document

8    from Spiegel that indicates a payment on LeClair's account on May 7, 2003. (Dkt. No. 25-8 at

9    2).) The evidence is conflicting and cannot be resolved on summary judgment; moreover, this

10   fact could be material to determine whether the statute of limitations had run when Suttell &

11   Associates filed its lawsuit.[9]

12          **E.      State Law Claims**

13           Plaintiff failed to respond to Defendant's argument regarding its state law claims.

14   Under most circumstances, the Court would take this to be a concession that the argument has

15   merit. Local Rules W.D. Wash. CR 7(b)(2). Nonetheless, the Court cannot sustain Defendant's

16   theory that Washington state law exempts Suttell & Associates from liability. Defendant states

17   that the Washington Collection Agency Act does not apply to Suttell & Associates because the

18   statute excludes the activities of "any person . . . directly related to the operations of a business

19   other than a collection agency . . . such as . . . lawyers." WASH. REV. CODE 19.16.100(3)(c).

20   Defendant seems to be arguing that its status as a law firm grants it total immunity. But Suttell

21   _____

22          [9] Even assuming that a six-year statute of limitations applies, by failing to file the

23   lawsuit within ninety days of service, the statute of limitations was not tolled until the date of
     filing: April 9, 2009. (King County Compl. (Dkt. No. 20 at 11)); *see also* WASH. REV. CODE §

24   4.16.170. Assuming *arguendo* that the date of last payment begins the limitations period, the
     suit was time-barred if the limitations period began in September 2002, and (barely) not time-

25   barred if the period began to run in May of 2003. The issues of (1) when the limitations period
     begins generally in debt-collection cases, (2) whether a three- or six-year limitations period

26   applies, and (3) when the limitations period began to run here, are not resolved by this Order.

ORDER
PAGE - 11

1   & Associates here was acting as a collection agency for Midland; it was not, for example,

2   collecting debts owed to it by a client for legal services. *Semper v. JBC Legal Group*, C04-

3   2240-RSL, 2005 WL 2172377, at *3 (W.D. Wash. Sept. 6, 2005). Defendant's activities here

4   were not "directly related to the operations of a business other than a collection agency," and

5   thus the state law claims stand.

6   **V.     FINAL OBSERVATIONS**

7          The Court is dismayed by the disorderly prosecution and defense of this action. Issues

8   were raised for the first time in response and reply briefs. The amendment deadline passed

9   without event—only to have third parties and claims added four days later. Both parties have

10   repeatedly cited state law where only federal law is applicable. Plaintiff cited one case that had

11   been overruled. Defendants moved for summary judgment with non-notarized declarations.

12   The Motion for Leave to Amend was improperly noted for consideration, and Defendant filed

13   its response to this motion on an apparently arbitrarily chosen date. The Court's consideration

14   of the merits of this matter over a smattering of procedural defects has been a generous

15   concession, and the parties should not expect such leniency again.

16   **VI.    CONCLUSION**

17          For the foregoing reasons, Plaintiff's Motion for Leave to File Supplemental Authority

18   (Dkt. No. 32) is GRANTED. Plaintiff's Motion to Amend (Dkt. No. 36) is GRANTED.

19   Defendant's Motion for Summary Judgment (Dkt. No. 19) is GRANTED IN PART and

20   DENIED IN PART, consistent with this Order.

21          DATED this 29th day of January, 2009.

22

23

24                         _____

25                         John C. Coughenour

                            UNITED STATES DISTRICT JUDGE

26

ORDER
PAGE - 12